IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CLARENCE H. NELSON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | CIVIL NO. 3:11-cv-512-HEH |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT AND RECOMMENDATION

Clarence H. Nelson, Jr. ("Plaintiff") has worked as an air conditioning and heating technician. He alleges that he suffered from a back injury, neck injury, knee pain, as well as problems with his right arm and hand. On November 13, 2008, Plaintiff applied for Social Security Disability ("DIB") with an onset date of June 1, 2004 — later amended to November 26, 2007 — under the Social Security Act (the "Act"). Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for DIB benefits. The Appeals Council subsequently denied Plaintiff's request for review on June 6, 2011.

Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that the ALJ improperly weighed the opinions of Plaintiff's physicians and erroneously assessed Plaintiff's residual functional capacity ("RFC"). (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-12.) In his decision, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work. (R. at 17.) In doing so, the ALJ assigned controlling weight to two of Plaintiff's physicians and did not assign any weight to the opinion of a third physician. (R. at 18-

19.) One of the two physicians to whom the ALJ assigned controlling weight was not a treating physician; nonetheless, because that physician's opinion was entitled to great weight, the ALJ's error was harmless.

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 6) be DENIED; that Defendant's motion for summary judgment (ECF No. 8) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Because Plaintiff complains that the ALJ erred when he assessed the weight to be given to the opinions of Plaintiff's physicians as well as his determination of Plaintiff's RFC, Plaintiff's medical history, the opinions of Plaintiff's physicians and Plaintiff's testimony are summarized below.

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

A.   **Plaintiff's Work History**

Plaintiff left school in the ninth grade and has a general equivalency diploma. (R. at 28.) Plaintiff worked as a heating, ventilation and air condition technician before he was injured on the job in an automobile accident. (*See* R. at 127, 305.)

B.   **Abdul Razaq, M.D.**

On June 1, 2004, Plaintiff was rear-ended while driving a car for work, went to the hospital and was discharged with bruising. (*See* R. at 211-14, 286.) Two weeks later, an MRI of his lumbar spine indicated L5-S1 degenerative disc bulging and an annual tear. (R. at 222.) On December 27, 2004, Plaintiff visited Abdul Razaq, M.D., FACS, FAAOS, an orthopedic surgeon, and complained of moderate low back pain. (R. at 289.) Dr. Razaq proscribed Vicodin and a series of epidural block injections. (R. at 289.) He wrote that Plaintiff "will be disabled for work until" January 17, 2005. (R. at 289.)

In March 2005, Dr. Razaq indicated that Plaintiff was "disabled for any work that requires prolonged sitting, bending, lifting and physical activity of engaging into strenuous physical work." (R. at 284.) He also documented that Plaintiff had scheduled a worker's compensation hearing. (R. at 284.) On November 28, 2005, Dr. Razaq documented that Plaintiff was "disabled for work at the present time" and would "require training into a different type of job because he cannot engage in a job that requires physically stressful activities such as repeated bending below the waist, lifting, and climbing." (R. at 267.) In January 2006, Dr. Razaq opined that Plaintiff might be able to "return to modified work or light duty" or perhaps should complete rehabilitation and a functional capacity evaluation to determine the level that he was capable of performing. (R. at 262.)

Moreover, between 2005 and 2007, Dr. Razaq's notes indicate tenderness, muscle spasms, limited range of motion, mild to moderate pain in the neck and back, as well as no muscle atrophy. (R. at 232-64.) Plaintiff was generally prescribed Flexeril, Ultracet, Ultram, physical therapy and home exercises. (R. at 234-64.) Throughout this time, Dr. Razaq continuously noted that Plaintiff was "disabled" or "disabled for work"; his last notion indicating that Plaintiff was "disabled for work" was dated July 24, 2007, which was also Dr. Razaq's last medical note in the record. (R. at 232-82.)

C.   **Bruce J. Ammerman, M.D.**

In February 2006, Dr. Razaq referred Plaintiff to a neurological consultation. (R. at 260.) On December 27, 2006, Plaintiff visited Bruce J. Ammerman, M.D., a neurologist. (R. at 229-30.) Dr. Ammerman summarized MRIs of Plaintiff's spine and electrodiagnostic studies that indicated C6 radiculopathy, degenerative disc bulging with an interval decreased annular tear and desiccation with disc protrusion L5-S1. (R. at 229.) Plaintiff had a mild restriction of lumbar motion with tenderness, no spasms and intact reflexes. (R. at 230.)

Dr. Ammerman diagnosed Plaintiff with symptomatic discogenic disease L5-S1 and cervical strain. (R. at 230.) He indicated that Plaintiff had "not yet reached maximum medical improvement." (R. at 230.) Dr. Ammerman opined that Plaintiff could not return to his prior occupation, but that "[s]edentary work would be appropriate." (R. at 230.)

D.   **Paul H. Griffith, III, M.D.**

On February 11, 2008, Plaintiff visited Paul H. Griffith, III, M.D., an orthopedic surgeon. (R. at 316.) Dr. Griffith documented Plaintiff's "continued complaints of lower back pain" and attempts to return to work. (R. at 316.) He indicated that Plaintiff had "fairly constant low-grade back pain, but any attempts at increasing his activity level reproduce[d] severe pain." (R. at

316.) Dr. Griffith classified Plaintiff's treatment after his accident as "long-term conservative management." (R. at 316.) He indicated that throughout this time, Plaintiff "continued to remain disabled." (R. at 316.) Dr. Griffith diagnosed Plaintiff with posttraumatic intrinsic disc disruption with chronic discogenic lower back pain and determined that Plaintiff was an excellent candidate for disc replacement at the L5-S1 level. (R. at 316.)

On March 6, 2008, Plaintiff underwent a lumbar discogram and was diagnosed with having a major discogenic pain mechanism at the L5-S1 intervertebral level. (R. at 308-09.) In April 2008, Dr. Griffith documented that Plaintiff's back pain was exacerbated when he attempted prolonged walking, standing, bending or lifting. (R. at 315.) Dr. Griffith indicated that Plaintiff remained "disabled from returning to working status." (R. at 315.) A month later, Dr. Griffith documented that Plaintiff was waiting for authorization for his disc replacement surgery so he could return to "a highly functional level and his previous job" and remained "unable to return to working status." (R. at 314.) On June 3, 2008, Dr. Griffith noted that Plaintiff was still waiting for authorization from worker's compensation to have his surgery and that he remained "disabled with intrinsic disc disruption at L5-S1." (R. at 313.) A month later, Plaintiff obtained authorization for his surgery and Dr. Griffith continued to note that he was "disabled from returning to working status." (R. at 312.) Plaintiff underwent surgery on December 17, 2008. (R. at 326-27.)

On January 5, 2009, Plaintiff followed-up with Dr. Griffith after his surgery. (R. at 347.) Dr. Griffith noted that Plaintiff had "a dramatic reduction already in his low back pain," had "quite good" range of motion of the lumbar spine, "continue[d] to do well postoperatively" but "remaine[d] disabled from returning to work." (R. at 347.) On February 2, 2009, Dr. Griffith noted that after the surgery Plaintiff "had good days and bad days when before, it was nothing

but bad days." (R. at 346.) Approximately two months later, Plaintiff had almost a full range of motion, improved his lower back function and was "ready for [a] formal work hardening and functional capacities evaluation." (R. at 345.)

On April 27, 2009, Dr. Griffith documented that he wanted Plaintiff "once again, to try to get into a functional capacities evaluation program, to determine the level of functioning that he [was] capable of." (R. at 362.) Dr. Griffith determined that Plaintiff remained "temporarily unable to return to working status." (R. at 362.) On June 2, 2009, Dr. Griffith indicated that Plaintiff "had an excellent response to disc replacement surgery," but maintained his opinion that Plaintiff was unable to work until he took a functional capacities evaluation. (R. at 355.) A few weeks later, he documented that Plaintiff remained "disabled from returning to working status" until Dr. Griffith could review the functional capacities evaluation. (R. at 361.) On July 28, 2009, Dr. Griffith observed that Plaintiff's "active range of motion [was] essentially full with minimal tenderness to palpation and no significant spasm." (R. at 360.) He opined that Plaintiff was capable of "full-time light duty and part-time medium" duty work and could return to working status. (R. at 360.)

E.    **Plaintiff's Testimony**

On September 3, 2009, Plaintiff indicated that, since his back surgery in 2008, he had pain that limited his activities. (R. at 166.) Continuing, he wrote that, "[b]efore [he] had back surgery, the pain in [his] back would come and go," but after the surgery it hurt "all the time." (R. at 174.)

At the hearing, Plaintiff testified that neither physical therapy nor back surgery helped him alleviate his pain and that his pain would reduce to a five out of ten with medication. (R. at 32-33, 37.) Plaintiff opined that he could lift twenty-five to thirty pounds, stand for twenty

6

minutes, sit for an hour, walk for twenty minutes and did not need to use any assistive devices. (R. at 33-34.) Plaintiff also indicated that he took antidepressants in 2007 for three months and had been referred to a psychiatric evaluation for worker's compensation "recently." (R. at 38-39.)

Plaintiff also testified that he drove once a week to the store during the relevant time period. (R. at 29-30.) Plaintiff received $622 from worker's compensation each week. (R. at 30, 39.) He continued to enjoy his hobby of restoring old cars. (R. at 35-36.)

## II. PROCEDURAL HISTORY

Plaintiff filed for DIB on November 13, 2008, claiming disability due to his back injury, neck injury, knee pain and problems with his right arm and hand with an alleged onset date of June 1, 2004. (R. at 13, 107-08, 122, 126.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 60-62, 69-71.) On June 2, 2010, Plaintiff testified before an ALJ and amended his onset date to November 26, 2007 with a closed date of October 6, 2009. (R. at 12.) On July 8, 2010, the ALJ issued a decision finding that Plaintiff was not under a disability. (R. at 13-20.) The Appeals Council subsequently denied Plaintiff's request to review the ALJ's decision on June 6, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R. at 1-3.)

## III. QUESTIONS PRESENTED

Did the Commissioner properly weigh the opinions of Plaintiff's physicians?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404, subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

7

Was the Commissioner's assignment of weight to the physicians' opinions supported by substantial evidence on the record and the application of the correct legal standard?

Did the Commissioner properly assess Plaintiff's residual functional capacity?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial

8

evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 26, 2007. (R. at 15.) At step two, the ALJ determined that Plaintiff was severely impaired from degenerative disc disease of the lumbar spine status post disc replacement. (R. at 15.) However, the ALJ found that Plaintiff's alleged psychiatric impairments were not supported by any evidence. (R. at 15-16.)

At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 16-17.) The ALJ then determined that Plaintiff had the RFC to perform the full range of sedentary work. (R. at 17.) The ALJ noted that Plaintiff drove once a week, lived with his 19-year-old son and received worker's compensation benefits during the relevant period. (R. at 17.) The ALJ indicated that Plaintiff's back surgery in December 2008 did not ease his pain, nor did injections or pain medication. (R. at 17.) Regardless, Plaintiff continued to take care of his dog and visit friends. (R. at 18.)

11

The ALJ then summarized Plaintiff's medical history, which documented that Plaintiff was in a motor vehicle accident on July 1, 2004, and subsequently experienced back pain. (R. at 18.) Treatment notes set forth Plaintiff's intermittent work history since his motor vehicle accident. (R. at 18.) Plaintiff attempted to alleviate his back pain with injections and physical therapy, but ultimately underwent surgery on December 17, 2008. (R. at 18.) Plaintiff recovered well from the surgery and demonstrated the ability to work full-time at a light exertional level or part-time at a medium exertional level. (R. at 18.)

The ALJ assigned controlling weight to Dr. Ammerman, who opined that Plaintiff was able to perform sedentary work in 2006. (R. at 19.) Controlling weight was also assigned to Dr. Griffith, who indicated that Plaintiff could perform light exertional work as of July 2009. (R. at 19.) Although the ALJ addressed Dr. Razaq's opinion that Plaintiff was disabled from work, he did not assign that opinion any weight. (*See* R. at 18-19.)

At step four, the ALJ assessed that Plaintiff was unable to perform his past relevant work as an air conditioning and heating technician. (R. at 19.) Next, considering Plaintiff's age, high school education, ability to speak English, work history and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 19-20.) The ALJ therefore found that Plaintiff had not been under a disability under the Act from June 1, 2004 through December 31, 2009. (R. at 20.)

Plaintiff asserts that the ALJ erroneously weighed his physicians' opinions. (Pl.'s Mem. at 6-12.) Plaintiff also argues that the ALJ erroneously assessed his RFC, as the ALJ failed to individually discuss each function as it related to Plaintiff. (Pl.'s Mem. at 3-6.) Defendant disagrees, arguing that substantial evidence supported the ALJ's decision. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 13-21.)

A. **The ALJ properly weighed the opinions of Plaintiff's physicians and any error by the ALJ was harmless.**

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). An ALJ may assign a physician's opinion anywhere from controlling (if that doctor is a treating physician) to great to no weight at all. SSR 96-2p.

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques; and, (2) is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. *Jarrells*

*v. Barnhart*, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *see also* 20 C.F.R. §§ 404.1527(d)(3)-(4), (e).

While the ALJ must generally give more weight to a treating physician's opinion, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993, F.2d 31, 35 (4th Cir. 1992)). Since its decision in *Hunter*, the Fourth Circuit has consistently held that, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (citing *Craig*, 76 F.3d at 590); *see also* 20 C.F.R. § 416.927(d)(2).

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

### 1. The ALJ committed harmless error when he assigned controlling weight to Dr. Ammerman.

Plaintiff argues that controlling weight could not have been assigned to Dr. Ammerman, because he did not have an ongoing treatment relationship with Plaintiff and was therefore not a treating source. (Pl.'s Mem. at 6-7.) Under the regulations, an ALJ may assign controlling weight to a treating physician. 20 C.F.R. § 404.1527(d). A treating physician is one "who has,

14

or has had, an ongoing treatment relationship with" the claimant where the ongoing treatment has been "a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [his] medical condition(s)." 20 C.F.R. § 404.1502. For example, a treating physician could evaluate a claimant only a few times or after long intervals. *Id.*

The Commissioner argues that Dr. Ammerman qualifies as one of Plaintiff's treating physicians, as Plaintiff visited Dr. Ammerman for a "highly specialized neurosurgery consultation," as recommended by Plaintiff's primary treating physician, Dr. Razaq. (Def.'s Mem. at 16 n.6.) This argument lacks validity, because Plaintiff only visited Dr. Ammerman one time, not a few times, as required by the regulations to qualify as a treating physician. (*See* R. at 260, 229-30.) The ALJ's assignment of Dr. Ammerman's opinion controlling weight was error, because Dr. Ammerman failed to qualify as Plaintiff's treating physician. The ALJ should have instead assigned Dr. Ammerman's opinion great weight.

The Commissioner asserts the ALJ's error was harmless. (Def.'s Mem. at 16 n.6.) The burden on showing whether the error was harmful is on "the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). When reviewing a decision for harmless error, a court must look at, among other things,

> an estimation of the likelihood that the result would have been different, an awareness of what body . . . has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Id.* at 411-12.

Plaintiff does not explain how the ALJ's error was harmful. Instead, he merely asserts that the ALJ erred. (Pl.'s Mem. at 7.) While only treating physicians can be afforded controlling weight, the ALJ could have assigned Dr. Ammerman great weight. SSR 96-2p. Practically

15

speaking, the difference between assigning controlling weight and great weight to Dr. Ammerman's opinion is almost non-existent, as either assignment of weight would have resulted in a sedentary RFC.

Had the ALJ assigned great, instead of controlling, weight to Plaintiff, substantial evidence would have supported that determination. Here, Dr. Ammerman reviewed Plaintiff's medical records, examined Plaintiff and determined that, while Plaintiff had not fully recovered from his accident and could not return to his prior work, he could still perform sedentary work. (R. at 229-30.) Such an opinion was consistent with the record, as Dr. Razaq noted that Plaintiff could not perform physically stressful activities and Dr. Griffith noted that Plaintiff's pain was exacerbated when he attempted prolonged walking, standing, bending or lifting. (R. at 284, 315.)

Therefore, even if the ALJ's assignment of controlling weight to Dr. Ammerman's opinion was error solely because Dr. Ammerman was not a treating physician, such error was harmless, as substantial evidence existed to support an assignment of great weight. *See Morgan v. Barnhart*, 142 Fed. Appx. 716, 723 (4th Cir. 2005) ("Any error the ALJ may have made in rejecting Dr. Holford's medical opinion, which provided essentially the same time restriction on sitting and standing as the FCE, was therefore harmless."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required where the alleged error clearly had no bearing on the procedure used or the substance of the decision reached." (internal quotation marks omitted)).

16

### 2. Substantial evidence existed to support the ALJ's weighing of the physicians' opinions.

Next, Plaintiff cites to SSR 96-5p and argues that Dr. Ammerman might not be aware of the regulatory definition of "sedentary work." (Pl.'s Mem. at 8.) Dr. Ammerman opined that, while Plaintiff was not fully improved and could not return to his previous work, Plaintiff could perform sedentary work. (R. at 230.) Under the regulations, sedentary work "represents a significantly restricted range of work." SSR 96-9p. Essentially, Dr. Ammerman opined that Plaintiff could perform some work, but not the work that he previously held. Ultimately, the ALJ is "responsible for making the determination or decision about whether [a plaintiff] meet[s] the statutory definition of disability" and the final responsibility for determining a plaintiff's RFC is that of the ALJ. 20 C.F.R. § 404.1527(e). The ALJ knew and understood the regulatory definition of the RFC that he determined for Plaintiff. Thus, the ALJ did not err when he reviewed Dr. Ammerman's and Dr. Griffith's opinions and adopted Dr. Ammerman's opinion that Plaintiff could perform sedentary work as his RFC.

Plaintiff asserts that the ALJ failed to evaluate the pertinent evidence in his record and argues that Dr. Razaq's opinions and Dr. Griffith's opinions before July 2009 should have been evaluated. (Pl.'s Mem. at 11-12.) Dr. Razaq's opinions were evaluated as they were discussed by the ALJ in his decision. (*See* R. at 18-19.) Dr. Razaq, however, continuously opined that Plaintiff was disabled. (*See* R. at 232-82.) Similarly, the ALJ fully summarized Dr. Griffith's patient notes, but only assigned weight to his opinions after July 2009. (*See* R. at 18-19.) Before that time, Dr. Griffith opined that Plaintiff was disabled, despite Plaintiff's statements to the SSA that before his back surgery, his pain would "come and go" and after the surgery, his back hurt "all the time." (*See, e.g.*, R. at 174, 312-16.)

An opinion that Plaintiff is disabled is, however, held for the Commissioner and not afforded any special significance. *See* 20 C.F.R. § 404.1527(e) ("A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."); SSR 96-5P ("Treating source opinions on issues reserved to the Commissioner will never be given controlling weight.") The ALJ therefore did not err when he weighed the opinions of Plaintiff's physicians.

B.  **The ALJ properly assessed Plaintiff's RFC.**

Plaintiff relies on SSR 96-8p in arguing that the ALJ improperly assessed his RFC. (Pl.'s Mem. at 6-10.) Essentially, he complains that the ALJ failed to set forth a function-by-function assessment of his abilities, as required in SSR 96-8p. (Pl.'s Mem. at 3.) Plaintiff is incorrect — instead, a narrative discussion of the record is sufficient. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); *Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003) (noting that SSR 96-8p merely suggests a function-by-function analysis, because an ALJ not conducting such an analysis could result in overlooking evidence).

Here, the ALJ summarized Plaintiff's medical history, the opinions of Plaintiff's physicians as well as his testimony, assigned weight to the opinion evidence and discussed Plaintiff's abilities of daily living. (R. at 17-20.) This narrative discussion was sufficient to support the ALJ's decision, because a function-by-function analysis is not required by the regulations. *Knox v. Astrue*, 327 Fed. Appx. 652, 657 (7th Cir. 2009). Therefore, the ALJ did not err in assessing Plaintiff's RFC, as it was properly supported by the opinion evidence of Drs. Ammerman and Griffith, as well as the substantial evidence that existed in the record.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (ECF No. 6) be DENIED; that Defendant's motion for summary judgment (ECF No. 8) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ 
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: July 31, 2012